**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
TING QIU QIU,
JIAN WEI DENG,
YU BO SU,
ZHAOBANG BAI, and
SHAOHONG ZENG,
*on behalf of themselves and others similarly situated,*

|  |  |
|---|---|
| Plaintiffs, | Case No. 18-cv-05448 (ER) |
| v. | 29 U.S.C. § 216(b) COLLECTIVE ACTION & FED. R. CIV. P. 23 CLASS ACTION |

SHANGHAI CUISINE, INC.
    d/b/a Shanghai Cuisine Bar & Restaurant,
R & M CENTURY, INC.
    d/b/a Shanghai Cuisine Bar & Restaurant,
UNITED RESTAURANT GROUP, INC.
    d/b/a Shanghai Cuisine Bar & Restaurant,
CHENWEN HO
    a/k/a Jonathan Ho,
NA SUN,
JIJIE HONG,
WING JING LAU, and
JOSEPHINE FENG,

**AMENDED COMPLAINT**

Defendants.
------------------------------------------------------------------x

Plaintiffs TING QIU QIU, JIAN WEI DENG, YU BO SU, ZHAOBANG BAI, and

SHAOHONG ZENG (hereinafter referred to as "Plaintiffs"), on behalf of themselves and others

similarly situated, by and through their attorney, Troy Law, PLLC, hereby bring this complaint

against Defendants SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant, R &

M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant, UNITED RESTAURANT

GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant, CHENWEN HO a/k/a Jonathan Ho, NA

SUN, JIJIE HONG, WING JING LAU, and JOSEPHINE FENG (hereinafter referred to as

"Defendants"), and allege as follows:

## INTRODUCTION

1.      This action is brought by the Plaintiffs on behalf of themselves as well as other employees similarly situated, against the Defendants for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and New York Labor Law ("NYLL"), N.Y. Lab. L. §§ 190 *et seq.*, 650 *et seq.*, arising from Defendants' various willful and unlawful employment policies, patterns and practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in pattern and practice of failing to pay their employees, including Plaintiffs, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage, including time shaved, (2) unpaid overtime wages, (3) improperly withheld meal credit, (4) liquidated damages, (5) prejudgment and post-judgement interest; and or (6) attorney's fees and cost.

4.      Plaintiffs further allege pursuant to NYLL § 650 *et seq.* and the New York Department of Labor Hospitality Industry Wage Order ("Wage Order"), 12 N.Y.C.R.R. § 146, that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation, including time shaved, (2) unpaid overtime compensation, (3) improperly withheld meal credit, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (5) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day,

(6) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (7) 9% simple prejudgment interest provided by NYLL, (8) post-judgment interest, and (9) attorney's fees and costs.

## JURISDICTION AND VENUE

5.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.      From on or about June 01, 2016 to April 22, 2018 Plaintiff TING QIU QIU was employed by Defendants to work as a Chef at Shanghai Cuisine Bar & Restaurant located at 89-91 Bayard Street, New York, NY 10013.

8.      From on or about April 26, 2014 to April 22, 2018 Plaintiff JIAN WEI DENG was employed by Defendants to work as a Miscellaneous Worker at Shanghai Cuisine Bar & Restaurant located at 89-91 Bayard Street, New York, NY 10013. During his employment at Shanghai Cuisine Bar & Restaurant, JIAN WEI DENG was also directed by Defendant CHENWEN HO a/k/a Jonathan Ho to work as a Miscellaneous Worker at another restaurant in midtown Manhattan, owned by CHENWEN HO a/k/a Jonathan Ho.

9.      From on or about December 10, 2016 to April 22, 2018 Plaintiff YU BO SU was employed by Defendants to work as a Fry Wok at Shanghai Cuisine Bar & Restaurant located at

89-91 Bayard Street, New York, NY 10013.

10.     From on or about August 24, 2017 to April 22, 2018, ZHAOBANG BAI was employed by Defendants to work as a waiter at Shanghai Cuisine Bar & Restaurant located at 89-91 Bayard Street, New York, NY 10013.

11.     SHAOHONG ZENG was employed by Defendants to work as a waiter at Shanghai Cuisine Bar & Restaurant located at 89-91 Bayard Street, New York, NY 10013.

**DEFENDANTS**

*Corporate Defendants*

12.     Defendant SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant is a domestic business corporation organized under the laws of the State of New York with a principal address at 89-91 Bayard Street, New York, NY 10013.

13.     SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

14.     SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant purchased and handled goods moved in interstate commerce.

15.     Defendant R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant is a domestic business corporation organized under the laws of the State of New York with a principal address at 89-91 Bayard Street, New York, NY 10013.

16.     R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

17.     R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant purchased and handled goods moved in interstate commerce.

18.     Defendant UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant is a domestic business corporation organized under the laws of the State of New York with a principal address in Midtown Manhattan, exact address currently unknown.

19.     UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

20.     UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant purchased and handled goods moved in interstate commerce.

### *Owner/Operator Defendants*

21.     The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendant and being among the ten largest shareholders and/or LLC members, are individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

22.     CHENWEN HO a/k/a Jonathan Ho, known as "Boss" to Plaintiffs, is the New York Alcoholic Beverage Control principal for R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant, was an shareholder of R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant, and, having sold his shares in R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant to UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant in exchange for shares in UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant's parent company United Restaurant Group International Inc., is a shareholder of United Restaurant Group International Inc., and (1) had the power to hire and fire employees of, (2) supervised and controlled employee work schedules or conditions of employment at, (3) determined the rate and method of payment at, and (4) maintained employee records for Shanghai Cuisine Bar & Restaurant.

23. CHENWEN HO a/k/a Jonathan Ho acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, N.Y. Lab. Law § 2 and the Wage Order, and is jointly and severally liable with SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant, R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant, and UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant.

24. NA SUN, known as "Lady Boss" to Plaintiffs, was a shareholder of R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant, and, having sold her shares in R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant to UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant in exchange for shares in UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant's parent company United Restaurant Group International Inc., is a shareholder of United Restaurant Group International Inc., (1) had the power to hire and fire employees of, (2) supervised and controlled employee work schedules or conditions of employment at, (3) determined the rate and method of payment at, and (4) maintained employee records for Shanghai Cuisine Bar & Restaurant.

25. NA SUN, acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, N.Y. Lab. Law § 2 and the Wage Order, and is jointly and severally liable with SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant, R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant, and UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant.

26. JIJIE HONG was the Chief Executive Officer and a New York Alcoholic Beverage Control principal for SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant, and

(1) had the power to hire and fire employees of, (2) supervised and controlled employee work schedules or conditions of employment at, (3) determined the rate and method of payment at, and (4) maintained employee records for Shanghai Cuisine Bar & Restaurant.

27.    JIJIE HONG acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, N.Y. Lab. Law § 2 and the Wage Order, and is jointly and severally liable with SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant, R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant, and UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant.

28.    WING JING LAU's apartment was the Principal Executive Office for SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant, and (1) had the power to hire and fire employees of, (2) supervised and controlled employee work schedules or conditions of employment at, (3) determined the rate and method of payment at, and (4) maintained employee records for Shanghai Cuisine Bar & Restaurant.

29.    WING JING LAU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, N.Y. Lab. Law § 2 and the Wage Order, and is jointly and severally liable with SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant, R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant, and UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant.

30.    JOSEPHINE FENG was a New York Alcoholic Beverage Control principal for SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant, and (1) had the power to hire and fire employees of, (2) supervised and controlled employee work schedules or conditions

of employment at, (3) determined the rate and method of payment at, and (4) maintained employee records for Shanghai Cuisine Bar & Restaurant.

31.     JOSEPHINE FENG acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, N.Y. Lab. Law § 2 and the Wage Order, and is jointly and severally liable with SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant, R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant, and UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant.

## **STATEMENT OF FACTS**

32.     Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

33.     Pursuant to 12 N.Y.C.R.R. § 146-2.2 and 29 USC § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

34.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

35.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

36.     While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

37.     Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

38.     Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their

use of tip credit.

39.     At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with wage notices at time of hire reflecting true rates of pay and payday, as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

40.     Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiffs worked over ten (10) hours would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

41.     Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

### SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant and R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant Were Joint Employers

42.     SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant and R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant operated Shanghai Cuisine Bar & Restaurant at 89-91 Bayard Street, New York, NY 10013 concurrently from on or about August 29, 2014 through April 6, 2018.

43.     SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant and R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant shared managers at Shanghai Cuisine Bar & Restaurant at 89-91 Bayard Street, New York, NY 10013, including CHENWEN HO a/k/a Jonathan Ho.

44.     The division of responsibilities for employees at Shanghai Cuisine Bar & Restaurant between SHANGHAI CUISINE, INC. d/b/a Shanghai Cuisine Bar & Restaurant and

R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant was practically indistinguishable.

45.     Employees at Shanghai Cuisine Bar & Restaurant used the same premises and equipment for their work.

46.     Employees at Shanghai Cuisine Bar & Restaurant, including the Plaintiffs, worked for Shanghai Cuisine Bar & Restaurant on a full-time basis, with the exception that from time to time CHENWEN HO a/k/a Jonathan Ho would direct JIAN WEI DENG to perform work at another restaurant he owned.

### *UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant Was a Successor to R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant*

47.     UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant purchased the shares of R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant from CHENWEN HO a/k/a Jonathan Ho and NA SUN on April 6, 2018, shortly before this lawsuit began, and before the employments of TING QIU QIU, JIAN WEI DENG, YU BO SU, ZHAOBANG BAI, and SHAOHONG ZENG ended.

48.     Following its purchase of R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant's shares, UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant continued to operate Shanghai Cuisine Bar & Restaurant under that name, at the same location, with the same menu, branding, and décor.

49.     UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant operated Shanghai Cuisine Bar & Restaurant using substantially the same equipment as R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant, substantially the same employees in substantially the same jobs as R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant, and substantially the same managers as R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar &

Restaurant including CHENWEN HO a/k/a Jonathan Ho.

50.     UNITED RESTAURANT GROUP, INC. d/b/a Shanghai Cuisine Bar & Restaurant continued to follow the same pay practices with respect to TING QIU QIU, JIAN WEI DENG, YU BO SU, ZHAOBANG BAI, and SHAOHONG ZENG, and upon information and belief other employees similarly situated, as had R & M CENTURY, INC. d/b/a Shanghai Cuisine Bar & Restaurant.

### Plaintiff TING QIU QIU

51.     From on or about June 01, 2016 to April 22, 2018, Plaintiff TING QIU QIU was employed by Defendants to work as a Chef at 89-91 Bayard Street, New York, NY 10013.

52.     From on or about June 01, 2016 to April 22, 2018, Plaintiff TING QIU QIU's regular work schedule ran from from 11:00 to 22:00 or from 11:30 to 22:30 for eleven (11) hours a day, for six (6) days with Wednesdays off and sixty six (66) hours a week for a total of 66.00 hours each week.

53.     At all relevant times, Plaintiff TING QIU QIU did not have a fixed time for lunch or for dinner.

54.     In fact, Plaintiff TING QIU QIU had five (5) to ten (10) minutes to eat and even then he was on call, meaning that if customer's order came, his break stopped and he had to cook.

55.     From on or about June 01, 2016 to December 31, 2017, Plaintiff TING QIU QIU was paid a flat compensation at a rate of two thousand eight hundred dollars ($2800.00) per month.

56.     From on or about January 01, 2018  to April 22, 2018 , Plaintiff TING QIU QIU was paid a flat compensation at a rate of zero dollars ($3000.00).

57.  At all relevant times, Plaintiff TING QIU QIU was not paid overtime pay for overtime work.

58.     At all relevant times, Plaintiff TING QIU QIU was never informed of his hourly

pay rate or any tip deductions toward the minimum wage.

59.     At all relevant times, Plaintiff TING QIU QIU's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

60.     Throughout his employment, Plaintiff TING QIU QIU was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

61.     Throughout his employment, Plaintiff TING QIU QIU was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

62.     Throughout his employment, Plaintiff TING QIU QIU was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

### Plaintiff JIAN WEI DENG

63.     From on or about April 26, 2014 to April 22, 2018, Plaintiff JIAN WEI DENG was employed by Defendants to work as a Miscellaneous Worker at 89-91 Bayard Street, New York, NY 10013.

64.     From on or about April 26, 2014 to April 22, 2018, Plaintiff JIAN WEI DENG's regular work schedule ran from from 11:00 to 22:00 for eleven (11) hours a day, for six (6) days with Fridays off and sixty six (66) hours a week for a total of 66.00 hours each week.

65.     At all relevant times, Plaintiff JIAN WEI DENG did not have a fixed time for lunch or for dinner.

66.     In fact, Plaintiff JIAN WEI DENG had five (5) to ten (10) minutes to eat and even

then he was on call, meaning that if customer's order came, his break stopped and he had to cook.

67.     From on or about April 26, 2014 to June 25, 2016, Plaintiff JIAN WEI DENG was paid a flat compensation at a rate of one thousand eight hundred dollars ($1800.00) per month.

68.     From on or about June 26, 2016 to April 22, 2018 , Plaintiff JIAN WEI DENG was paid a flat compensation at a rate of zero dollars ($2200.00).

69.     At all relevant times, Plaintiff JIAN WEI DENG was not paid overtime pay for overtime work.

70.     At all relevant times, Plaintiff JIAN WEI DENG was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

71.     At all relevant times, Plaintiff JIAN WEI DENG's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

72.     Throughout his employment, Plaintiff JIAN WEI DENG was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

73.     Throughout his employment, Plaintiff JIAN WEI DENG was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

74.     Throughout his employment, Plaintiff JIAN WEI DENG was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

### *Plaintiff YU BO SU*

75.     From on or about December 10, 2016 to April 22, 2018, Plaintiff YU BO SU was

employed by Defendants to work as a Fry Wok at 89-91 Bayard Street, New York, NY 10013.

76.     From on or about December 10, 2016 to April 22, 2018, Plaintiff YU BO SU's regular work schedule ran from from 11:00 to 22:00 for eleven (11) hours a day, for six (6) days with Thursdays off and sixty six (66) hours a week for a total of 66.00 hours each week.

77.     At all relevant times, Plaintiff YU BO SU did not have a fixed time for lunch or for dinner.

78.     In fact, Plaintiff YU BO SU had five (5) to ten (10) minutes to eat and even then he was on call, meaning that if customer's order came, his break stopped and he had to cook.

79.     From on or about December 10, 2016 to December 31, 2017, Plaintiff YU BO SU was paid a flat compensation at a rate of two thousand eight hundred dollars ($2800.00) per month.

80.     From on or about January 01, 2018  to April 22, 2018 , Plaintiff YU BO SU was paid a flat compensation at a rate of zero dollars ($3000.00).

81.   At all relevant times, Plaintiff YU BO SU was not paid overtime pay for overtime work.

82.     At all relevant times, Plaintiff YU BO SU was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

83.     Throughout his employment, Plaintiff YU BO SU was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

84.     Throughout his employment, Plaintiff YU BO SU was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each

workweek.

85.     Throughout his employment, Plaintiff YU BO SU was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

### Plaintiff ZHAOBANG BAI

86.     From on or about August 24, 2017 to April 22, 2018, Plaintiff ZHAOBANG BAI was employed by Defendants to work as a waiter at 89-91 Bayard Street, New York, NY 10013.

87.     From on or about August 24, 2017 to April 22, 2018, Plaintiff ZHAOBANG BAI's regular work schedule ran from for early shifts from 11:00 to 22:00 for eleven (11) hours and for late shifts from 12:00 to 22:30 for ten and a half (10.5) hours a day, with no break, for around half the time for four (4) days, and half of the time for five (5) days, and some of the time for six (6) days for an average of forty eight and a half (48.5) each week.

88.     At all relevant times, Plaintiff ZHAOBANG BAI did not have a fixed time for lunch or for dinner.

89.     In fact, Plaintiff ZHAOBANG BAI had thirty (30) minutes to eat, around 14:30 and again around 20:00, and even then he was on call, meaning that if customer's order came, his break stopped and he had to serve.

90.     From on or about August 24, 2017 to April 22, 2018, Plaintiff ZHAOBANG BAI was paid a flat compensation at a rate of five dollars ($5.00) per hour worked, including hours in which he worked in excess of forty (40) in a workweek.

91.     At all relevant times, Plaintiff ZHAOBANG BAI was not paid overtime pay for overtime work.

92.     At all relevant times, Plaintiff ZHAOBANG BAI was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

93.     Further, at all relevant times, Plaintiff ZHAOBANG BAI had to clean the restroom, the floor, and the restaurant glass.

94.     Moreover, Defendants illegally deducted two dollars and fifty cents ($2.50) from each meal taken, despite not having given Plaintiff notice, from his wages.

95.     Throughout his employment, Plaintiff ZHAOBANG BAI was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

96.     Throughout his employment, Plaintiff ZHAOBANG BAI was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

97.     Throughout his employment, Plaintiff ZHAOBANG BAI was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

### Plaintiff SHAOHONG ZENG

98.     From on or about June 15, 2017 to April 22, 2018, Plaintiff SHAOHONG ZENG was employed by Defendants to work as a waiter at 89-91 Bayard Street, New York, NY 10013.

99.     From on or about June 15, 2017 to April 22, 2018, Plaintiff SHAOHONG ZENG's regular work schedule ran from for early shifts from 11:00 to 22:00 for eleven (11) hours and for late shifts from 12:00 to 22:30 for ten and a half (10.5) hours a day, with no break for a total of 1000.00 hours each week.

100.    At all relevant times, Plaintiff SHAOHONG ZENG did not have a fixed time for lunch or for dinner.

101.     In fact, Plaintiff SHAOHONG ZENG had thirty (30) minutes to eat, around 14:30 and again around 20:00, and even then he was on call, meaning that if customer's order came, his break stopped and he had to serve.

102.     From on or about June 15, 2017 to April 22, 2018, Plaintiff SHAOHONG ZENG was paid a flat compensation at a rate of five dollars ($5.00) per hour, including hours in which he worked in excess of forty (40) in a workweek.

103.     At all relevant times, Plaintiff SHAOHONG ZENG was not paid overtime pay for overtime work.

104.     At all relevant times, Plaintiff SHAOHONG ZENG was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

105.     Further, at all relevant times, Plaintiff SHAOHONG ZENG had to clean the restroom, the floor, and the restaurant glass.

106.     Moreover, Defendants illegally deducted two dollars and fifty cents ($2.50) from each meal taken, despite not having given Plaintiff notice, from his wages.

107.     At all relevant times, Plaintiff SHAOHONG ZENG's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

108.     Throughout his employment, Plaintiff SHAOHONG ZENG was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

109.     Throughout his employment, Plaintiff SHAOHONG ZENG was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in

each workweek.

110.    Throughout his employment, Plaintiff SHAOHONG ZENG was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

## COLLECTIVE ACTION ALLEGATIONS

111.    Plaintiffs  bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week, and/or who have had meal credit illegally deducted from their pay (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

112.    Plaintiffs  bring  their  NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

113.    All said persons, including Plaintiffs, are referred to herein as the "Class."

114.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

115.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

116.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendant employed Plaintiffs  and the Class within the meaning of the New York law;

b.    Whether Plaintiffs  and Class members are promised and not paid at their promised hourly wage;

c.    Whether Plaintiffs  and Class members are entitled to and paid overtime at their promised hourly wage under the New York Labor Law;

d.    Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs  and the Rule 23 Class spread-of-hours pay as required by the NYLL;

e.    Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

f.    Whether Defendants illegally deducted meal credit from Plaintiffs' pay;

g.    Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs  and the Rule 23 Class's start of employment and/or timely thereafter;

h.    Whether Defendants provided paystubs detailing the rates of pay and

credits taken towards the minimum wage to Plaintiffs  and the Rule 23 class on each payday; and

i.    At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

*Typicality*

117.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs  and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

118.    Plaintiffs  are  able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs  are  represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

*Superiority*

119.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and

without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

120.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Unpaid Wage**
**Brought on behalf of the Plaintiffs  and the FLSA Collective]**

121.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

122.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs  in full, and the similarly situated collective action members, for some or all of the hours they worked.

123.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

124.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs  and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II.
### [Violation of New York Labor Law—Failure to Pay Minimum Wage
### Brought on behalf of Plaintiffs  and Rule 23 Class]

125.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

126.     At all relevant times, Plaintiffs  are  employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

127.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff, and the collective action members, in full for some or all of the hours they worked.

128.     Defendants knowingly and willfully violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

129.     An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April

9, 2011 under NY Wage Theft Prevention Act, and interest.

### COUNT III.
**[Violations of the Fair Labor Standards Act—Failure to Pay Overtime**
**Brought on behalf of the Plaintiffs  and the FLSA Collective]**

130.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

131.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

132.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

133.    Defendants' failure to pay Plaintiffs  and the FLSA Collective their overtime pay violated the FLSA.

134.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs  and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

135.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

136.    Defendants willfully failed to notify Plaintiffs  and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA

Collectives' labor.

137.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT IV.
### [Violation of New York Labor Law—Failure to Pay Overtime
### Brought on behalf of Plaintiffs and Rule 23 Class]

138.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

139.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

140.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one-half times the hourly rate the Plaintiffs and the class are entitled to.

141.    Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

142.    Defendants' failure to pay Plaintiffs was not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Spread of Time Pay
### Brought on behalf of Plaintiffs and Rule 23 Class]

143.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

144.    The NYLL requires employers to pay an extra hour's pay for every day that an

employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

145.    Defendants' failure to pay Plaintiffs  spread-of-hours pay was not in good faith.

## COUNT VI.
### [Violation of 29 U.S.C. § 203(m), 29 CFR §531.3—Meal Credit Violation Brought on behalf of Plaintiffs and the FLSA Collective]

146.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

147.    29 U.S.C. § 203(m) defines "wages paid" to an employee to include the reasonable cost of board, lodging or other facilities.

148.    29 CFR § 531.3(a) has determined that "reasonable cost" as used in section 3(m) of the FLSA, means not more than the actual cost to the employer.

149.    Thus, 29 CFR §531.3 *et seq.* allows for employers to legally deduct the fair value or reasonable cost of meal furnished to employees, so long as it does not include a profit to the employer or to any affiliated person.

150.    Defendants did not keep records of actual costs of the meals provided.

151.    Defendants' automatic meal deductions on employee paychecks, regardless of whether Plaintiff and the FLSA Collective takes the bread and beverage provided, underscores that Defendants' meal policy is made primarily for the Defendants' benefit.

152.    Defendants' use of meal credit toward Plaintiffs and the Collective Members was ingenuous and not in good faith.

## COUNT VII.
### [Violation of NYCRR—Meal Credit Violation Brought on behalf of Plaintiffs and the Rule 23 Class]

153.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

154.    The NYCRR provides for employers to legally deduct $2.50 per meal for all workers on and after January 1, 2011, provided that it is furnished by the employer to the employee. NYCRR §146-1.9.

155.    The NYCRR provides that a meal shall provide adequate portions of at least one type of food from all four of the following groups: (1) fruits or vegetables; (2) grains or potatoes; (3) eggs, meat, fish, poultry, dairy, or legumes; and (4) tea, coffee, milk, or juice. *See* NYCRR §146.37.

156.    The Defendants only offered coffee and bread as a meal to their employees, which is not a meal as defined in the NYCRR.

157.    Defendants intentionally failed to provide to employees the meals that they claimed credit for towards the employees' wage, in clear violation of NYCRR.

158.    Furthermore, Plaintiffs and other similarly situated employees did not necessarily take the meal, and Defendants did not record actual cost accrued for providing the meal.

159.    Defendants' use of meal credit toward Plaintiffs and Rule 23 Class was illegal, willful, and not in good faith.

## COUNT VIII.
### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice Brought on behalf of Plaintiffs  and Rule 23 Class]

160.    Plaintiffs  re-allege  and  incorporate  by  reference  all  preceding  paragraphs  as though fully set forth herein.

161.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of

employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

162.     Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

163.     Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs  even after the fact.

164.     Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT IX.
### [Violation of New York Labor Law—Failure to Provide Wage Statements Brought on behalf of Plaintiffs  and Rule 23 Class]

165.     Plaintiffs  re-allege and incorporate  by reference all preceding paragraphs as though fully set forth herein.

166.     The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

167.     Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

168.     Due to Defendants' violations of New York Labor Law, Plaintiffs  are  entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law.

N.Y. Lab. Law §198(1-d).

## DEMAND FOR TRIAL BY JURY

169.     Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a)      Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

h)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

j)      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

k)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

l)      An award of lost wages and liquidated damages equal to lost wages as a result of Plaintiffs' unlawful termination, compensatory damages, 9% simple prejudgment interest provided by NYLL, post-judgment interest, and attorney fees and costs;

m)      The cost and disbursements of this action;

n)      An award of prejudgment and post-judgment fees;

o)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

p)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
        June 4, 2020

TROY LAW, PLLC

*Attorneys for the Plaintiffs, proposed FLSA Collective, and potential Rule 23 Class*


 */s/ John Troy*
John Troy (JT0481)